# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Charity McDaniels

**(b)** County of Residence of First Listed Plaintiff: Delaware County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Caren N. Gurmankin, Esq., Console Mattiacci Law
1525 Locust Street, 9th Floor, Philadelphia, PA 19102
215-545-7676

## DEFENDANTS

Riddle Memorial Hospital; Main Line Health, Inc., Main Line Healthcare

County of Residence of First Listed Defendant: Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 12101, et seq.; 42 U.S.C. § 1981, et seq.

Brief description of cause:
Plaintiff was discriminated against based on her race and disability.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 8/27/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Charity McDaniels | : | CIVIL ACTION |
| v. | : | |
| Riddle Memorial Hospital, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 8/27/2026 | [signature] | Plaintiff, Charity McDaniels |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Media, PA 19063

***RELATED CASE IF ANY:*** Case Number:________________ Judge:____________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY MCDANIELS**<br>**Drexel Hill, PA 19026**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RIDDLE MEMORIAL HOSPITAL**<br>**1068 West Baltimore Pike**<br>**Media, PA 19063**<br><br>**and**<br><br>**MAIN LINE HEALTH, INC.**<br>**240 N. Radnor-Chester Road, Suite 170**<br>**Radnor, PA 19087**<br><br>**and**<br><br>**MAIN LINE HEALTHCARE**<br>**3803 West Chester Pike**<br>**Newtown Square, PA 19073**<br><br>**Defendants.** | : | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED**<br><br>**CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## I. INTRODUCTION

Plaintiff, Charity McDaniels, brings this action against her former employers, Riddle Memorial Hospital, Main Line Health, Inc., and Main Line Healthcare ("Defendants"), for unlawful race and disability discrimination and retaliation based on her engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq.

(“ADA”); Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, et seq. (“Section 1981”); and, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. (“PHRA”). Plaintiff seeks damages, including back-pay, front-pay, compensatory, punitive, liquidated, costs and attorneys’ fees, and all other relief that this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Charity McDaniels, is an individual and a citizen of the Commonwealth of Pennsylvania. She resides in Drexel Hill, Pennsylvania 19026.

2. Plaintiff is Black.

3. Defendant, Riddle Memorial Hospital, is a Pennsylvania corporation with a principal place of business at 240 N. Radnor Chester Road, Radnor, PA 19087.

4. Defendant, Main Line Health, Inc., is a Pennsylvania corporation with a principal place of business at 240 N. Radnor Chester Road, Radnor, PA 19087.

5. Defendant, Main Line HealthCare, is a Pennsylvania corporation with a principal place of business at 240 N. Radnor Chester Road, Radnor, PA 19087.

6. At all times material hereto, Defendants acted by and through their authorized agents and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants’ businesses.

7. At all times material hereto, Defendants were employers within the meanings of Title VII, the ADA, Section 1981, and the PHRA.

8. At all times material hereto, Plaintiff was an employee within the meanings of the Title VII, the ADA, Section 1981, and the PHRA.

## III. JURISDICTION AND VENUE

9. The causes of action that form the basis of this matter arise under Title VII, the ADA, Section 1981, and the PHRA.

10. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

11. The District Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

12. The District Court has jurisdiction over Count III (Section 1981) pursuant to 28 U.S.C. §1331.

13. The District Court has jurisdiction over Count IV (PHRA) pursuant to 28 U.S.C. §1367.

14. Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b).

15. On or about October 9, 2024, Plaintiff filed a Complaint with the Pennsylvania Commission on Human Relations ("PHRC") cross-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

16. On or about March 19, 2025, Plaintiff filed a Second Complaint with the PHRC, cross-filed with the EEOC, complaining of the acts of discrimination and retaliation alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of the Second PHRC Complaint (with personal identifying information redacted).

17. On or about June 3, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as Exhibit "C" is a true and correct copy of

this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

18. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

19. Plaintiff was hired by Defendants in or about September 2022 as a Registered Nurse.

20. In or about November 2023, Plaintiff was promoted to Assistant Nurse Manager. Plaintiff remained in that position throughout the remainder of her employment.

21. Plaintiff consistently performed her job duties in a highly competent manner.

22. In or around January 2024, Plaintiff began reporting to Katherine Day, Director of Nursing. Day reported to Phil Hatfield, Vice President, Patient Services. Hatfield reported to Elizabeth Craig, Senior Vice President and Chief Nursing Officer.

23. To Plaintiff's information and belief, she was the only Black employee reporting directly to Day.

24. To Plaintiff's information and belief, she was the only Black Assistant Nurse Manager in the Nursing Department at Defendant Riddle Memorial Hospital.

25. To Plaintiff's information and belief, she was one of the only Black Assistant Nurse Managers, if not the only Black Assistant Nurse Manager, in the Labor and Delivery Department across Defendants Main Line Healthcare and Main Line Health, Inc.

26. Black employees, including Plaintiff, were treated differently, and worse, than white employees, including that Plaintiff was treated worse than the white Assistant Nurse Managers. The same includes, but is not limited to, that which is set forth herein.

27. Plaintiff heard her prior manager, Shannon Hittle, say that she would not feel comfortable being a patient on a floor with all Black nurses.

28. Plaintiff's performance was unjustly criticized.

29. Plaintiff's decisions and judgment were unjustly criticized.

30. Plaintiff was excluded from meetings and communications related to her job responsibilities and to which her white colleagues were included.

31. Supervisory employees ignored Plaintiff.

32. Plaintiff was falsely accused of things that she did not do.

33. As a result of the way that supervisory employees treated Plaintiff, Plaintiff's subordinate employees did not demonstrate the same respect for her authority that they did towards white Assistant Nurse Managers, including refusing to take orders from her and undermining her authority.

34. To Plaintiff's information and belief, Defendants failed to hire qualified Black candidates while hiring less qualified white candidates.

35. One of Plaintiff's direct reports, a white nurse, complained that Plaintiff was not supporting her and that a group of almost all Black staff members was receiving favorable treatment.

36. When Plaintiff disputed her direct report's assertions and engaged in a discussion about the same, her direct report indicated that she did not want to speak further with Plaintiff, her direct supervisor, without a mediator present.

37. Plaintiff reported to Defendants, including Day and Hittle, the complaint that her white direct report made about her.

38. A Black nurse told Plaintiff to watch her back because nurses were talking about her both in-person and via group text.

39. Plaintiff was told by multiple Black employees that, prior to her employment, when both a Black nurse and a white nurse made errors in their work, Defendants terminated the Black employee while the white employee was disciplined and retained.

40. Plaintiff complained, repeatedly, about race discrimination, including to Day; Hittle; Shelly Buck, President; Patricia Roe, Human Resources Business Strategy Manager; Linda Ford, Human Resources Director; Wanda Watlington, Director of Nursing; and, Elizabeth Kelly, Nurse Manager.

41. To Plaintiff's information and belief, Defendants did not take action regarding her complaints of race discrimination, including investigating the same.

42. On or about May 24, 2024, Plaintiff sent the following email to Hatfield; Craig; Buck; Roe; Ford; Gregory Papa, Vice President of Human Resources; Rosangely Cruz-Rojas, Vice President, Chief Diversity and Equity Officer; Pam Teufel, Senior Vice President, Chief Human Resources Officer; and, Shannon Sciotto, Human Resources Business Strategy Manager:

> It has been brought to my attention that alterations to the bulletin board located outside of the staff lounge have been made in an attempt to rectify concerns brought forth anonymously. I know that some context has already been provided by my manager, but I am going to provide you with more.
>
> The most recent topic of education selected by the Diversity advisory council was the term "aggressive." Members of the diversity advisory council and myself contributed articles, tweets, and narrated accounts on what it's like for women of color who are battling the "angry black woman" stereotype in the workplace. The bulletin board was made to address this unfair label.
>
> This was not a subject we picked out of thin air; it was intended to address behavior we have observed at Riddle. Speaking from my own experiences, a staff member recently subtly suggested that I fit the "angry black woman" stereotype during a discussion about my management style. This stereotype has led to the stifling of voices, and the tolerance of unfair treatment for women of color who

fear that any response on their part will be considered a negative one. The intent of this bulletin board, like everything else that the diversity advisory council has done, has been to bring awareness and understanding to the unit.

The birthplace at Riddle is not a stranger to issues regarding race and unfair treatment of people of color. The staff cling to their denial of a race issue as strongly as they cling to their dismissive behavior of people or things who are different than them. I joined this unit in the midst of their work, and I can confidently say that the staff do not want to change. And why should they when they work for a health system that will back them in their quest to keep things the way they are?

During my transition from staff nurse to management, I have dealt with disrespect both subtle and blatant from the staff. Every decision or move that I have made has been unfairly scrutinized, staff have been outright combative at times, and I have not responded. My fear of giving them more ammunition with which to target me has caused me to silence myself because I know the system I am up against. When I've brought my concerns to HR, the response was that no one else on the unit has complained about race issues.

It seems to me that Main Line Health has a big issue with how they manage issues regarding racism and bias. Instead of coming up to the unit to look at the bulletin board in person and actually read it, a picture has been circulated around with an accompanying story of how the birthplace diversity advisory council has done something wrong. The advice given was to take the word "aggressive" down along with an article that appears to have garnered some offense. What about the offense of the staff the articles pertain to? What about the offense of all the women who have been treated horribly, given unfair chances to succeed, manipulated and set up by their peers all because they're not white?

Taking down the word sends a clear message to people of color. The message that Main Line Health doesn't really care about diversity, equity, and inclusion like they claim to. It confirms the idea that all you have to do is complain that things done by people of color are considered a threat, regardless of the true intent behind it. It weakens this idea circulated by HR of "seek to understand." Especially when the conversations surrounding this board have been had with everyone except those responsible for it.

Let me be the first to tell you that as a woman of color, I do not appreciate coming to work everyday in a hostile environment, being asked to go above and beyond for my staff and this health system, and be rewarded with more oppression. You should also know that I have shared all of my concerns with my husband who happens to be a labor and employment attorney. He is frankly appalled and extremely concerned by the workplace I have described with him. The future of this bulletin board deserves attention from the lens of what can be done to support the staff of color, not how to silence them.

43. Shortly after Plaintiff sent her email on May 24, 2024, she met with Hatfield; Hittle; and, Ford about the same.

44. Hatfield said that, after Plaintiff went through all that she said that she had gone through, it would seem that she would no longer want to work at Defendants.

45. Ford told Plaintiff that she had not received any other race discrimination complaints.

46. To Plaintiff's information and belief, Defendants did not take action regarding her complaints of race discrimination, including investigating the same.

47. On or about June 13, 2024, Plaintiff told Day that she would be taking a medical leave of absence.

48. Plaintiff needed to take the medical leave of absence in connection with the medical issues that she was experiencing as a result of Defendants' discriminatory conduct.

49. Day told Plaintiff that she would not be permitted to go out on medical leave until she received approval for the same.

50. On or about June 27, 2024, Plaintiff went out of work on a medical leave of absence due to the race discriminatory conduct to which she was being subjected, as well as Defendants' failure to take appropriate remedial and/or corrective action regarding the same.

51. Plaintiff had been diagnosed with anxiety and depression in connection with Defendants' race discriminatory conduct.

52. On or about October 4, 2024, Ford notified Plaintiff that, since her medical leave pursuant to the Family Medical Leave Act had ended, Defendants would be posting her position.

53. Ford told Plaintiff that, when she was medically cleared to return to work, she would have thirty (30) days to find an open position at Defendants.

54. Plaintiff reminded Ford that she had advised Defendants on September 25, 2024 that she expected to be released to return to work within six (6) to eight (8) weeks and had provided a doctor's note confirming the same.

55. On or about October 9, 2024, Plaintiff filed a complaint with the PHRC.

56. Plaintiff advised Defendants, including Day; Hatfield; Roe; and, Ford, that she filed a complaint with the PHRC and sent them a copy of the same on or about October 10, 2024.

57. No one at Defendants responded to Plaintiff's message regarding her PHRC complaint.

58. No one at Defendants advised Plaintiff of any action that they were taking regarding her PHRC complaint.

59. On or about December 8, 2024, Plaintiff received a letter from Ford, dated November 22, 2024, advising her that her employment would be terminated effective December 24, 2024.

60. Plaintiff asked Ford to explain why she was being terminated and complained that Defendants were continuing to discriminate and retaliate against her.

61. Ford responded to Plaintiff that it was Defendants' understanding that she "did not intend to return to work in the foreseeable future", given that she had been approved for short-term disability leave through December 23, 2024. Ford also told Plaintiff that she could request additional leave as a reasonable accommodation.

62. On or about December 17, 2024, Plaintiff wrote to Ford to confirm their prior communication in which Ford told her that she would have thirty (30) days to find an open position within Defendants once she was medically cleared to return to work.

63. Ford told Plaintiff that Defendants' policy was to terminate an employee's employment after that employee had been on medical leave for one hundred and eighty (180) days.

64. In around late December 2024 and early January 2025, Plaintiff requested continued medical leave as a reasonable accommodation through January 25, 2025.

65. On or about January 10, 2025, Ford advised Plaintiff that Defendants granted her request for a reasonable accommodation of continued medical leave through January 25, 2025.

66. Plaintiff understood from Ford that she could not return to her previous position of Assistant Nurse Manager, but that she could work with Defendants' Talent Acquisition Department to identify open positions for which she was qualified.

67. On or about January 13, 2025, Plaintiff applied for the posted position of Registered Nurse, Ambulatory – OBGYN.

68. Plaintiff was qualified for the position of Registered Nurse, Ambulatory – OBGYN.

69. On or about January 23, 2025, Plaintiff applied for the posted position of Staff Nurse, Ambulatory – GYN Oncology.

70. Plaintiff was qualified for the position of Staff Nurse, Ambulatory – GYN Oncology.

71. On or about January 23, 2025, Plaintiff applied for the posted position of TeleCare Registered Nurse – Ambulatory.

72. Plaintiff was qualified for the position of TeleCare Registered Nurse – Ambulatory.

73. On or about January 29, 2025, Plaintiff applied for the posted position of Registered Nurse, Operating Room – Surgicenter.

74. Plaintiff was qualified for the position of Registered Nurse, Operating Room – Surgicenter.

75. On or about January 29, 2025, Plaintiff applied for the posted position of Registered Nurse, Ambulatory – Cardiology.

76. Plaintiff was qualified for the posted position of Registered Nurse, Ambulatory – Cardiology.

77. On or about January 29, 2025, Plaintiff applied for the posted position of Registered Nurse – PACU.

78. Plaintiff was qualified for the position of Registered Nurse – PACU.

79. On or about January 29, 2025, Defendants advised Plaintiff only that they would not be moving forward with her application for the position of Registered Nurse, Operating Room – Surgicenter and that she was not selected for the same.

80. On or about February 5, 2025, Plaintiff had screening interviews with a Talent Acquisition employee for the positions of Registered Nurse, Operating Room – Surgicenter; Registered Nurse – PACU; Staff Nurse, Ambulatory – GYN Oncology; and, Registered Nurse, Ambulatory – OBGYN.

81. On or about February 10, 2025, Defendants advised Plaintiff that they did not select her for the position of Staff Nurse, Ambulatory – GYN Oncology as that position had been filled.

82. Defendants also advised Plaintiff that they were not moving her forward in the interview process for the position of Registered Nurse – PACU.

83. Defendants cancelled Plaintiff's interviews that had already been set up in connection with the position of Registered Nurse – PACU.

84. On or about February 11, 2025, Defendants advised Plaintiff that she was not selected for the position of Staff Nurse, Ambulatory – GYN Oncology.

85. In connection with the Staff Nurse, Ambulatory – GYN Oncology position, Defendants told Plaintiff only that they would not be moving forward with her application at that time.

86. On or about February 18, 2025, Plaintiff interviewed for the position of TeleCare Registered Nurse.

87. Plaintiff's interviewees told her that Defendants' Talent Acquisition would contact her to set up a second interview for the position of TeleCare Registered Nurse.

88. Defendants' Talent Acquisition did not contact Plaintiff to set up a second interview for the position of TeleCare Registered Nurse.

89. On or about February 21, 2025, Plaintiff submitted a doctor's note to Defendants advising that she was medically cleared to return to work.

90. On or about February 24, 2025, Plaintiff reached out to Defendants to schedule the second interview for the TeleCare Registered Nurse position. She did not receive a response from Defendants' Talent Acquisition regarding the same.

91. On or about February 26, 2025, Plaintiff applied for the posted position of Registered Nurse, Ambulatory – Primary Care.

92. Plaintiff was qualified for the position of Registered Nurse, Ambulatory – Primary Care.

93. On or about February 26, 2025, Plaintiff applied for the posted position of Registered Nurse, Ambulatory – OBGYN.

94. Plaintiff was qualified for the position of Registered Nurse, Ambulatory – OBGYN.

95. On or about March 3, 2025, Plaintiff again reached out to Defendants' Talent Acquisition to schedule the second interview for the position of TeleCare Registered Nurse.

96. Plaintiff did not receive a response to her message to Defendants' Talent Acquisition to schedule her second interview for the position of TeleCare Registered Nurse.

97. On or about March 5, 2025, Defendants advised Plaintiff that she was not selected for the position of Registered Nurse, Ambulatory – OBGYN.

98. On or about March 6, 2025, Plaintiff learned from Defendants' Talent Acquisition employee that he was waiting to hear back from the managers regarding the second interview for the TeleCare Registered Nurse position.

99. On or about March 6, 2025, Ford advised Plaintiff that Defendants understood that she was medically cleared to return to work, that her internal job search had been unsuccessful, and that she would be terminated effective March 7, 2025.

100. Plaintiff responded to Ford on or about March 6, 2025 identifying the several positions within Defendants to which she had applied, and included that,

> Out of all of these positions, I have only been interviewed for one position (telecare RN). During this interview, I was told to expect a call from Jeff Brill to schedule a second interview. It has been two weeks since that interview and i've [*sic*] only just received a response from Jeff stating that he is waiting to hear back from the manager. I am qualified for the positions to which i've [*sic*] applied. Can you please provide me with an explanation as to why I have not been selected for any of these position[s] and why I have not been interviewed for most of them? I would like to remain employed in any open position for which I am qualified.

101. No one at Defendants, including Ford, responded to Plaintiff's March 6, 2025

email.

102. Defendants terminated Plaintiff's employment effective March 7, 2025.

103. On or about March 13, 2025, Plaintiff send an email to Ford that included:

> I am writing this follow up email because I have not heard back from you regarding my last email. I would like to reiterate that during the 30 day search I applied to several job postings. At this time I would like an explanation as to why I have not been selected for hire or interview for any of the positions, as I am qualified for them. It is my intention to remain employed in any open position for which I am qualified. Even the one position that I interviewed for, was supposed to result in a second interview and I was not given the opportunity to do so.

104. Ford responded to Plaintiff's March 13, 2025 email that she was sorry that Plaintiff's job search was not successful and that "[h]iring managers do not generally provide Human Resources with an explanation of their individual decisions."

105. Defendants did not place Plaintiff into any open position, including those that she applied to, as set forth herein.

106. Plaintiff's race was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including the hostile work environment to which she was subjected, the termination of her position/employment, and Defendants' failure to select her for an open position at Defendants, including the positions to which she applied in 2025.

107. Plaintiff's disabilities were motivating and/or determinative factors in Defendants' discriminatory treatment of Plaintiff, including the termination of her position/employment, and Defendants' failure to select her for an open position at Defendants, including the positions to which she applied in 2025.

108. Plaintiff's complaints of discrimination were motivating and/or determinative factors in connection with Defendants' retaliatory treatment of Plaintiff, including the

termination of her position/employment and Defendants' failure to select her for an open position at Defendants, including the positions to which she applied in 2025.

109. Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

110. The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

111. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## **COUNT I - Title VII**

112. Plaintiff incorporates herein by reference paragraphs 1 through 111 above, as if set forth herein in their entirety.

113. By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated Title VII.

114. Said violations were done with malice and/or reckless indifference.

115. As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

116. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

117. No previous application has been made for the relief requested herein.

**COUNT II – ADA**

118. Plaintiff incorporates herein by reference paragraphs 1 through 117 above, as if set forth herein in their entirety.

119. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

120. Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

121. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

122. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

123. No previous application has been made for the relief requested herein.

**COUNT III – Section 1981**

124. Plaintiff incorporates herein by reference paragraphs 1 through 123 above, as if set forth herein in their entirety.

125. By committing the foregoing acts of race discrimination and retaliation based on Plaintiff's complaints of Defendants' discriminatory conduct, Defendants have violated Section 1981.

126. Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

127. As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

128. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

129. No previous application has been made for the relief requested herein.

**COUNT IV – PHRA**

130. Plaintiff incorporates herein by reference paragraphs 1 through 129 above, as if set forth herein in their entirety.

131. Defendants, by the above improper, discriminatory, and retaliatory acts, have violated the PHRA.

132. Said violations were intentional and willful.

133. As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

134. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

135. No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a. declaring the acts and practices complained of herein to be a violation of Title VII;

b. declaring the acts and practices complained of herein to be a violation of the ADA;

c. declaring the acts and practices complained of herein to be a violation of Section 1981;

d. declaring the acts and practices complained of herein to be a violation of the PHRA;

e. enjoining and restraining permanently the violations alleged herein;

f. entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

g. awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

h. awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

i. awarding punitive damages under Title VII, the ADA, and Section 1981;

j. awarding Plaintiff such other damages as are appropriate under Title VII, the ADA, Section 1981, and the PHRA; and

k. awarding Plaintiff the costs of suit, expert fees, and other disbursements, and reasonable attorneys' fees; and

l. granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Date: August 27, 2026 By: ______________________________

Caren N. Gurmankin (205900)
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorney for Plaintiff,
Charity McDaniels

# Exhibit A

Received
OCT 09 2024
PA Human Relations Commission Philadelphia

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**COMPLAINT**

COMPLAINANT:

**CHARITY MCDANIELS**

v.

RESPONDENT:

**MAIN LINE HEALTH**

AND

**RIDDLE MEMORIAL HOSPITAL**

Docket No. 202400682

1. The Complainant herein is:

Name: Charity McDaniels

Address: [redacted]
Drexel Hill, PA 19020

2. The Respondent herein is:

Names: Main Line Health; Riddle Memorial Hospital

Address: 1068 West Baltimore Pike
Media, PA 19063

3. I, Charity McDaniels, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), as set forth below.

**Discrimination**

**A. I specifically allege:**

[1] I was hired by Respondent in or about September 2021.

[2] I am a current employee of Respondent.

[3] I have consistently performed my job duties in a competent manner.

[4] I hold the position of Assistant Nurse Manager.

[5] I report to Katherine Day (white), Director of Nursing. Day reports to Phil Hatfield (white), Vice President, Patient Services. Hatfield reports Elizabeth Craig (white), Senior Vice President, Chief Nursing Officer.

[6] In November 2023, I was promoted from Registered Nurse to Assistant Nurse Manager, and I began reporting to Shannon Hittle (white), Nurse Manager.

[7] In January 2024, after Hittle went on leave, I began reporting to Day.

[8] I am the only black employee directly reporting to Day.

[9] I am the only black Assistant Nurse Manager employee, out of six (6) Assistant Nurse Manager employees in Respondents' Nursing department.

[10] In addition to me, the following employees directly report to Day.

a) Tara Radcliffe (white), Nurse Manager;

b) Diane Czibik (white), Nurse Manager;

c) Angela Spires (white), Assistant Nurse Manager;

d) Amy Yingling (white), Assistant Nurse Manager.

[11] I was treated differently and worse, and in a more hostile and dismissive manner, than white employees were treated.

[12] My performance was unjustly criticized.

[13] I was ignored by supervisory employees and subordinate employees.

[14] I was yelled at.

[15] I was told that I was not a manager.

[16] I was falsely accused of things I did not do.

[17] I was falsely accused of being "on a power trip."

[18] My decisions were criticized.

[19] Nurses refused to take orders from me.

[20] Subordinate employees unjustly complained about me.

[21] I have been excluded from meetings and communications related to my job duties and responsibilities.

[22] During a conversation about my management style, my direct report, Jessica Naugle (white), Nurse, indicated that I fit the "angry black woman" stereotype and she refused to speak with me further without a mediator present.

[23] I heard that Hittle commented that she would not feel comfortable being a patient on a floor with all black nurses..

[24] Respondents failed to hire qualified black candidates while hiring less qualified white candidates.

[25] Candace Perry (black), Nurse, told me to watch my back because nurses were talking about me in person and via a group text.

[26] I heard that both Danielle Grant, (black), Nurse, and Victoria Volpe, (white), Nurse, made an error, and Respondents terminated only Grant (black), while Volpe (white) was disciplined and retained.

[27] On numerous occasions, I complained of race discrimination in separate meetings with, in addition to other employees, Day, Hittle, Shelly Buck (black), President, Patricia Roe (white), Human Resources Business Strategy Manager, Linda Ford (white), Human Resources Director, Wanda Watlington (black), Director of Nursing, and Elizabeth Kelly (black), Nurse Manager.

[28] Respondent failed to investigate my race discrimination complaints.

[29] Respondent failed to remedy or prevent the race discrimination to which I have been subjected.

[30] I was told that no other employee had complained of race discrimination.

[31] On May 24, 2024, in an email to Hatfield, Craig, Buck, Roe, Ford, Gregory Papa (white), then Vice President of Human Resources, Rosangely Cruz-Rojas (Hispanic), Vice President, Chief Diversity and Equity Officer, Pam Teufel (white), Senior Vice President, Chief Human Resources Officer, and Shannon Sciotto (white), Human Resources Business Strategy Manager, I complained of race discrimination in connection with how employees of color and I were being treated. I stated: "Speaking from my own experiences, a staff member recently subtly suggested that I fit the 'angry black woman' stereotype during a discussion about my management style. This stereotype has led to the stifling of voices, and the tolerance of unfair treatment for women of color who fear that any response on their part will be considered a negative one." I stated: "When I've brought my concerns to HR, the response was that no one else on the unit has complained about race issues."

[32] On May 28, 2024, in a meeting with Hatfield, Hittle, and Ford, I complained of race discrimination and provided further details of the same. Hatfield stated that, after going through all I have gone through, it would seem that I would not want to work at

Respondent any longer. Ford stated that she had not received any other race discrimination complaints.

[33] Respondent failed to investigate my race discrimination complaints.

[34] Respondent failed to remedy or prevent the race discrimination to which I have been subjected.

[35] I received no conclusion or outcome or investigative report in connection with any investigation into my race discrimination complaints.

[36] On June 13, 2024, in a meeting with Day, I stated that I would be taking a medical leave of absence. Day stated that I could not go out on medical leave until it was approved.

[37] On June 27, 2024, I went out of work on a medical leave of absence due to the race discrimination to which I was subjected.

[38] I remain on a medical leave of absence.

[39] Respondent subjected me to a hostile work environment because of my race.

[40] I have had no performance or disciplinary issues throughout my employment.

[41] Respondents' race discriminatory conduct toward me has caused me emotional distress.

[42] Respondents' conduct and comments evidence a bias against black employees.

[43] Respondent has an underrepresentation of black employees, particularly in leadership and/or higher-level positions.

**B.** Respondents have discriminated against me because of my race (black), in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended. 43 P.S. § 951, *et seq.* ("PHRA"), and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.* ("1981").

4. The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

__X__ **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a)__**

____ Section 5.1 Subsection(s) ____________________

____ Section 5.2 Subsection(s) ____________________

____ Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) ____________________

5. Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__ **This charge will be referred to the EEOC for the purpose of dual filing.**

6. The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

10/9/24
(Date Signed)

Charity McDaniels
(Signature) Charity McDaniels
[redacted]
Drexel Hill, PA 19020

# Exhibit B

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**SECOND COMPLAINT**

| | |
|---|---|
| COMPLAINANT: | |
| **CHARITY MCDANIELS** | Docket No. |
| v. | |
| RESPONDENTS: | |
| **MAIN LINE HEALTH** | |
| and | |
| **RIDDLE MEMORIAL HOSPITAL** | |

1. The Complainant herein is:

   Name: Charity McDaniels

   Address: [redacted]
   Drexel Hill, PA 19020

2. The Respondents herein are:

   Names: Main Line Health; Riddle Memorial Hospital

   Address: 1068 West Baltimore Pike
   Media, PA 19063

3. I, Charity McDaniels, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black) and my disability (including history of and regarded as) and retaliation because of my engaging in protected activity and my seeking reasonable accommodations for my disability, as set forth below.

**<u>Discrimination and Retaliation</u>**

**A. I specifically allege:**

[1] On October 4, 2024, in a phone call with Ford, while I was out of work on a medical leave of absence due to the race discrimination to which I was subjected, Ford stated that, since my FMLA leave had ended, Respondents would be posting my position. She stated that, when I was cleared to return to work, I would have thirty (30) days in which to find an open position at Respondents to remain employed. I stated that, per my September 25, 2024 email to Respondents, I planned to return to work within six (6) to eight (8) weeks, and had provided a doctor's note reflecting the same.

[2] On October 9, 2024, I filed my first Complaint with the PHRC.

[3] On October 10, 2024, in an email to Katherine Day (white), Director of Nursing, Phil Hatfield (white), Vice President, Patient Services, Patricia Roe (white), Human Resources Business Strategy Manager, and Linda Ford (white), Human Resources Director, I attached my first PHRC Complaint and stated the following: "As a courtesy, I want to inform you that I have filed a Complaint of discrimination with the Pennsylvania Human Relations Commission, a copy of which is attached."

[4] I received no response to my above email.

[5] On December 8, 2024, while I was out of work on a medical leave of absence due to the race discrimination to which I was subjected, I received a letter dated November 22, 2024, and signed by Ford, in which Respondents terminated my employment, effective December 24, 2024.

[6] On December 9, 2024, in an email to Ford, I stated that I was surprised to receive the termination letter and that I did not understand why I was being terminated, without

having received any response to any doctor's notes or my request to extend my medical leave of absence as a reasonable accommodation for my medical condition. I complained of the discrimination and retaliation to which I had been subjected.

[7] On December 11, 2024, in an email from Ford, she did not deny the discrimination and retaliation to which I had been subjected and stated that, as I had been approved for short term disability leave through December 23, 2024, Respondents' understanding was that I "did not intend to return to work in the foreseeable future." She stated that I could request additional leave as a reasonable accommodation.

[8] On December 17, 2024, in an email to Ford, I stated that I had understood from my October 4, 2024 conversation with her that, when I was cleared to return to work, I would have thirty (30) days in which to find an open position to remain employed.

[9] On December 19, 2024, in an email from Ford, she stated that Respondents' policy was to terminate an employee's employment after an employee had been on medical leave for one hundred eighty (180) days.

[10] On December 30, 2024, in an email to Ford, I requested an extended medical leave as a reasonable accommodation for my disability.

[11] On January 3, 2025, in an email from Ford, she provided me with instructions on submitting my reasonable accommodation request and stated that, once Respondents reviewed my request, they would determine if they could accommodate me.

[12] Following the above, I submitted my request to extend my medical leave of absence until January 25, 2025 as a reasonable accommodation for my disability.

[13] On January 10, 2025, in an email from Ford, she stated that Respondents considered my request to be reasonable and, since I had an anticipated return to work date of

January 25, 2025, I could start working with Talent Acquisition to identify positions for which I was qualified.

[14] On January 13, 2025, in an email to Ford, I requested information on the process of working with Talent Acquisition to identify positions for which I was qualified.

[15] On January 21, 2025, in a phone call with Connie Samulewicz (white), Recruiter, Senior Talent Acquisition Partner, we discussed posted positions for which I was qualified, and I stated that I would move forward with the application process.

[16] On January 23, 2025, I applied for the posted Registered Nurse, Ambulatory – OBGYN position. I was qualified for the position.

[17] On January 23, 2025, I applied for the posted Staff Nurse, Ambulatory – GYN Oncology position. I was qualified for the position.

[18] On January 23, 2025, I applied for the posted TeleCare Registered Nurse – Ambulatory position. I was qualified for the position.

[19] On January 29, 2025, I applied for the posted Registered Nurse, Operating Room – Surgicenter position. I was qualified for the position.

[20] On January 29, 2025, I applied for the posted Registered Nurse, Ambulatory – Cardiology position. I was qualified for the position.

[21] On January 29, 2025, I applied for the posted Registered Nurse – PACU position. I was qualified for the position.

[22] On January 29, 2025, in an email from Main Line Health Talent Acquisition, Respondents failed to select me for the Registered Nurse, Operating Room – Surgicenter position. The stated reason was that Respondents "will not be moving forward with [my] application at this time."

[23] On February 5, 2025, in a phone call with Jeffrey Brill (white), Talent Acquisition Partner, I had screening interviews with him for the Registered Nurse, Operating Room – Surgicenter position, the Registered Nurse – PACU position, the Staff Nurse, Ambulatory – GYN Oncology position, and the Registered Nurse, Ambulatory – OBGYN position.

[24] On February 10, 2025, in a phone call with Brill, Respondents failed to select me for the Staff Nurse, Ambulatory – GYN Oncology position, as that position had been filled, and failed to select me for the Registered Nurse – PACU position, as he told me that I would not be interviewed for that position.

[25] My scheduled interview with Joann Martin (white), Nurse Manager, and Margaret Elderton (white), Assistance Nurse Manager, for the Registered Nurse – PACU position, on February 11, 2025, was cancelled.

[26] On February 10, 2025, in an email from Main Line Health Talent Acquisition, Respondents failed to select me for the Staff Nurse, Ambulatory – GYN Oncology position. The stated reason was that Respondents "will not be moving forward with [my] application at this time."

[27] On February 11, 2025, in an email from Main Line Health Talent Acquisition, Respondents failed to select me for the Registered Nurse, Ambulatory – OBGYN position. The stated reason was that Respondents "will not be moving forward with [my] application at this time."

[28] On February 18, 2025, I interviewed with Jessica Stevens (white), Ambulatory Virtual Practice Manager, and Niki Riely (white), Office Coordinator, for the

TeleCare Registered Nurse – Ambulatory position. Stevens stated that Brill would contact me to schedule a second interview.

[29] Brill did not contact me to schedule a second interview.

[30] On February 21, 2025, I submitted a doctor's note, confirming that I was cleared to return to work.

[31] On February 24, 2025, in a phone call with Samulewicz, I stated that I was trying to schedule a second interview for the TeleCare Registered Nurse – Ambulatory position, but that I had not received a response. She instructed me to contact Brill.

[32] On February 24, 2025, in a voice message and an email to Brill, I stated that I was following up to schedule a second interview for the TeleCare Registered Nurse – Ambulatory position.

[33] I received no response to my above email or voice message.

[34] On February 26, 2025, I applied for the posted Registered Nurse, Ambulatory – Primary Care position. I was qualified for the position.

[35] On February 26, 2025, I applied for the posted Registered Nurse, Ambulatory – OBGYN position. I was qualified for the position.

[36] On March 3, 2025, in a voice message to Brill, I stated that I was following up to schedule a second interview for the TeleCare Registered Nurse – Ambulatory position.

[37] I received no response to my above voice message.

[38] On March 5, 2025, in an email to Samulewicz, I stated that I was following up for an update and any further information regarding a second interview for the

TeleCare Registered Nurse – Ambulatory position for which I had applied and interviewed. I stated that I had emailed and called Brill, but had not heard back from him.

[39] On March 5, 2025, in a response email to Samulewicz, she stated that only Brill would have the information that I was requesting, and that she asked Brill to contact me.

[40] On March 5, 2025, in an email from Main Line Health Talent Acquisition, Respondents failed to select me for the Registered Nurse, Ambulatory – OBGYN position. The stated reason was that Respondents "will not be moving forward with [my] application at this time."

[41] On March 5, 2025, in an email from Brill, Respondents failed to select me for the Registered Nurse, Ambulatory – OBGYN position. The stated reason was that Respondents "decided to move forward with other candidates for the role."

[42] On March 6, 2025, in an email from Brill, he stated that he was waiting to hear back from the manager regarding the second interview for the TeleCare Registered Nurse – Ambulatory position.

[43] On March 6, 2025, in an email from Ford, she stated that Respondents received the return-to-work note from my medical provider, that my internal job search has not been successful, and that I would be terminated on March 7, 2025.

[44] On March 6, 2025, in a response email to Ford, I stated that I continued to seek to remain employed with Respondents, listed the eight (8) internal positions for which I had applied, and stated: "Out of all of these positions, I have only been interviewed for one position (telecare RN). During this interview, I was told to expect a call from Jeff Brill to schedule a second interview. It has been two weeks since that interview and i've only just received a response from Jeff stating that he is waiting to hear back from the manager. I am qualified for the

positions to which i've applied. Can you please provide me with an explanation as to why I have not been selected for any of these position[s] and why I have not been interviewed for most of them? I would like to remain employed in any open position for which I am qualified."

[45] I received no response to my above email.

[46] On March 7, 2025, Respondents terminated my employment.

[47] On March 13, 2025, in an email to Ford, I stated: "I am writing this follow up email because I have not heard back from you regarding my last email. I would like to reiterate that during the 30 day search I applied to several job postings. At this time I would like an explanation as to why I have not been selected for hire or interview for any of the positions, as I am qualified for them. It is my intention to remain employed in any open position for which I am qualified. Even the one position that I interviewed for, was supposed to result in a second interview and I was not given the opportunity to do so."

[48] Respondents failed to remedy or prevent the race and disability discrimination and retaliation to which I was subjected.

[49] Respondents subjected me to a hostile work environment because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[50] Respondents terminated my employment because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[51] Respondents failed to select me for the Ambulatory – OBGYN position for which I was qualified and had applied because of my race and/or my disability and/or my

seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[52] Respondents failed to select me for the Staff Nurse, Ambulatory – GYN Oncology position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[53] Respondents failed to select me for the TeleCare Registered Nurse – Ambulatory position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[54] Respondents failed to select me for the Registered Nurse, Operating Room – Surgicenter position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[55] Respondents failed to select me for the Registered Nurse, Ambulatory – Cardiology position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[56] Respondents failed to select me for the Registered Nurse – PACU position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[57] Respondents failed to select me for the Nurse, Ambulatory – Primary Care position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[58] Respondents failed to select me for the Registered Nurse, Ambulatory – OBGYN position for which I was qualified and had applied because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[59] Respondents failed to select me for any position for which I was qualified because of my race and/or my disability and/or my seeking reasonable accommodations for my disability and/or my engaging in protected activity, including my having filed a PHRC Complaint.

[60] I received no explanation, including the selection criteria, as to why I was not selected for any position for which I was qualified.

[61] I had no performance or disciplinary issues throughout my employment.

[62] Respondents' race and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[63] Respondents' conduct and comments evidence a bias against black and/or disabled and/or complaining employees.

**B.** Respondents have discriminated against me because of my race (black) and my disability (including history of and regarded as) and retaliated against me because of my engaging in protected activity and my seeking reasonable accommodations for my disability, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.* ("1981").

4. The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

__X__ **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__**

____ Section 5.1 Subsection(s) ______________________________

____ Section 5.2 Subsection(s) ______________________________

____ Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) ______________________________

5. Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__ **This charge will be referred to the EEOC for the purpose of dual filing.**

6. The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

____________________ ________________________________________

(Date Signed) (Signature) Charity McDaniels

[redacted]

Drexel Hill, PA 19020

# Exhibit C

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 6/3/2026

**To:** Charity McDaniels
[redacted]
Drexel Hill, PA 19026

Charge No: 17F-2025-60083
EEOC Representative and email: State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough 6/3/2026

Karen McDonough
Deputy District Director

cc:

For Respondent
Caren Litvin, Esq.
Litvin Law Office
150 N. Radnor Chester Road, Suite F-200
Radnor, PA 19087

For Charging Party
Caren N. Gurmankin, Esq.
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

Please retain this notice for your records.